IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


PERCY WILLIAM TRAVILLION      )
                                       )
    Petitioner - Defendant      )     Civil Action No. 10-903
             v.              )     (Criminal No. 04-144)
                                       )
UNITED STATES OF AMERICA      )
                                       )
    Respondent - Plaintiff      )


MEMORANDUM OPINION

CONTI, District Judge.

Pending before the court is a motion to vacate, set aside, or correct judgment of
conviction by a person in federal custody, pursuant to 28 U.S.C. § 2255 (the "Motion" (ECF No.
453))[1] filed by petitioner Percy Travillion ("petitioner" or "Travillion"). Upon reviewing the
Motion, petitioner's memorandum in support ("Memorandum of Points and Authorities in
Support of Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255
("petitioner's Memorandum" (ECF No. 454))), the government's brief in opposition
(Government's Opposition to Defendant's Motion to Vacate, Set Aside, or Correct Sentence by a
Person in Federal Custody Pursuant to Title 28, United States Code, Section 2255
("government's Brief" (ECF No. 469)), and petitioner's reply ("Petitioner's Opposition to
Government's Reply Motion Under Rule 5 To Vacate, Set Aside, or Correct Sentence Pursuant
to Title 28, United States Code, Section 2255" (ECF No. 505)). The court will **DENY** the
Motion because, among other things, the record demonstrates that petitioner was not prejudiced
by his trial counsel's actions.

---

[1] Most of the relevant filings with respect to the Motion were filed in Criminal No. 04-144. The reference to an ECF
number in this opinion will be to the docket at Criminal No. 04-144, unless otherwise noted.

## I.    Background

On June 17, 2004, petitioner was named as a coconspirator in three counts of a nineteen-count indictment against eight individuals for federal drug trafficking offenses occurring in the Pittsburgh, Pennsylvania area.  Petitioner was charged in Count Nine with conspiracy to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. § 846, in Count Ten with possession with intent to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), and in Count Thirteen with conspiracy to distribute 500 grams or more of powder cocaine in violation of 21 U.S.C. § 846.  (ECF No. 1).  Petitioner pled not guilty to these charges and proceeded to a trial before a jury which commenced on November 7, 2006, and resulted in a verdict of guilty on all three counts on November 20, 2006.  (ECF No. 299).  After a presentence investigation report ("PIR") was prepared, objections to the PIR were submitted (ECF Nos. 355, 356), and a three-day sentencing hearing (ECF Nos. 367, 384), petitioner was sentenced by this court on January 24, 2008 to 188 months of imprisonment to be followed by a period of five years of supervised release on each count of the indictment, to be concurrently served.  (ECF No. 385).

Petitioner filed a timely notice of appeal of his conviction to the Court of Appeals for the Third Circuit on January 29, 2008 (Criminal No. 08-1337 (ECF No. 386)).  In his direct appeal petitioner alleged: (1) insufficiency of the evidence to support the jury's conviction; (2) improper jury instructions through this court's refusal to grant a *corpus delicti* instruction on Count Ten of the indictment, and the court's instructing the jury to take any stipulated facts as true; (3) a procedural error in calculating the sentencing guidelines through a two-point increase for obstruction of justice; and (4) lack of congressional authority to mandate petitioner supplying a

DNA sample pursuant to the <u>DNA Analysis Backlog Elimination Act of 2000</u>.[2]  <u>United States v.</u>

<u>Travillion</u>, 321 F. App'x 156, 157-59 (3d Cir. 2009).  On April 7, 2009, the Court of Appeals for

the Third Circuit affirmed this court's judgment and sentence and rejected all of petitioner's

claims.  (<u>Id.</u>).

On July 7, 2010, Travillion filed the instant Motion, in which he collaterally attacks his

sentence by raising allegations of ineffective assistance of his counsel, David Chontos

("Chontos" or "petitioner's counsel"), in violation of his Sixth Amendment rights, and argues

that as a consequence he is being held in custody in violation of the Constitution, laws and

treaties of the United States.  (<u>See</u> Mot. at 3 (ECF No. 453)).  In the Motion, petitioner sets forth

four specific grounds for the ineffective assistance of his counsel,[3] alleging: "(1) Trial Counsel

failed to effectively investigate and cross-examine Government witnesses, (2) Trial Counsel

failed to effectively investigate facts made known to him by Petitioner constituting Petitioner's

only realistic defense, (3) Trial Counsel failed to adequately advise Petitioner of the risk in his

testifying in his own behalf, and (4) Trial Counsel failed to adequately object to Petitioner's

conviction on two separate counts that comprised the same conspiracy, thus exposing Petitioner

to double jeopardy."  (Pet'r's Mem. at 2 (ECF No. 454)).  For the reasons set forth below,

petitioner is not entitled to relief on any of those four grounds and accordingly petitioner's

Motion must be denied.

## II.      Standard of Review

Under 28 U.S.C. § 2255(a), a prisoner in federal custody may move the court which

imposed the sentence to vacate, set aside, or correct that sentence "upon the ground that the

---

[2] 42 U.S.C. § 14135(a).

[3] Petitioner was represented by Chontos at trial and on direct appeal to the Court of Appeals for the Third Circuit. Petitioner's present motion before the court was filed *pro se*.

sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A § 2255 motion seeks extraordinary habeas corpus relief; the statute provides with respect to remedies that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Petitioner requests two particular remedies in his Motion (in combination with an omnibus prayer for any equitable remedies the court deems appropriate), moving this court to: "(a) Vacate Petitioner's conviction in this case; or (b) In the event that the Court does not grant the relief sought . . . correct Petitioner's sentence by adjusting the advisory Guidelines downward by two levels." (Mot. at 5 (ECF No. 453)).

A district court is required to hold an evidentiary hearing on a § 2255 motion, unless the motion, files, and records of the case conclusively show that the movant is not entitled to relief. 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). The threshold the petitioner must meet to obtain an evidentiary hearing is considered to be "reasonably low." Id. at 546. Despite consideration of this low threshold, after thorough review of the files and records of the case as well as petitioner's Memorandum and the government's Brief in opposition, the court finds the record conclusively shows that petitioner is not entitled to relief. The review of the record demonstrates that petitioner was not prejudiced by his counsel's actions. Therefore, petitioner's Motion will be denied without need for an evidentiary hearing.

### III.  Preliminary Discussion

### a. Timeliness and Propriety of Petitioner's Motion

A § 2255 motion is subject to a one year statute of limitations. In the circumstances present here, that period began to run on "the date on which the judgment of conviction [became] final . . ." 28 U.S.C. § 2255(f)(1). Petitioner had a direct appeal to the Court of Appeals for the Third Circuit, which entered judgment affirming his convictions on April 7, 2009. (ECF No. 417). While petitioner did not raise an ineffective assistance of counsel claim on direct appeal, this is not dispositive of petitioner's Motion because "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal." Massaro v. United States, 538 U.S. 500, 503 (2003). Petitioner did not file a writ of certiorari with the Supreme Court of the United States appealing the court of appeals' decision. As such, his time to petition for certiorari expired on July 6, 2009. (Mot. at 5 (ECF No. 453)). In establishing when petitioner's judgment becomes "final" for the purposes of filing a motion under 28 U.S.C. § 2255, the statute of limitations begins to run from "the date on which the defendant's time for filing a timely petition for certiorari review expires." Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999). Therefore, the one year statute of limitations for petitioner's Motion began to run on July 6, 2009, the date when his judgment became final, and expired one year thereafter.

Notice of petitioner's Motion was filed with the clerk of court on July 7, 2010 (ECF No. 453), which is past the one year limitations period. A federal court hearing a motion for habeas corpus relief may raise issues about the statute of limitations *sua sponte*. United States v. Bendolph, 409 F.3d 155, 164 (3d Cir. 2005). Petitioner's Motion is nonetheless timely because it: (1) was deposited in his confining correctional institution's internal mailing system on or before the last day for filing; and (2) sufficiently sets forth pursuant to 28 U.S.C. § 1746 a signed statement containing the date of deposit within the mail system (July 4, 2010) and certification that first-class postage has been prepaid. See FED. R. GOVERNING § 2255 CASES 3(d). Petitioner

maintains this basis for timeliness in his Motion (Mot. at 5), and the government does not dispute this issue in its Brief in opposition. Therefore, petitioner's Motion is not barred by either his failure to litigate his ineffective assistance claims on direct appeal or by the one year statute of limitations.

A substantial portion of petitioner's Memorandum is devoted in essence to again attacking the sufficiency of the evidence against him to support his convictions, as well as the propriety of his two-point sentencing guidelines enhancement for obstruction of justice. Both issues, however, were already raised on direct appeal and found to be without merit by the court of appeals. See Travillion, 321 F. App'x at 156-59. Although petitioner presents his claim before the court in the form of a motion under 28 U.S.C. § 2255 alleging ineffective assistance of counsel, this court notes that given the substance of the underlying allegations within his Motion, petitioner essentially is attempting to relitigate these same issues yet again. This time his arguments, however, are couched in terms of his counsel's alleged deficiencies, rather than the deficiencies of this court (in giving its jury instructions and sentencing petitioner) or the trial jury (in weighing the evidence as presented). "A section 2255 petition is not a substitute for an appeal . . . nor may it be used to relitigate matters decided adversely on appeal. . . ." Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1074-75 (3d Cir. 1985) (citations omitted). While it is problematic that this court must parse petitioner's arguments in light of the inability of petitioner to reargue matters decided against him on appeal, this court will address the merits of the present Motion solely with respect to his allegations of ineffective assistance of counsel. He cannot relitigate any underlying arguments which were previously denied by the Court of Appeals for the Third Circuit.

### b. Ineffective Assistance of Counsel

As a § 2255 motion is one for extraordinary habeas corpus relief, "the appropriate inquiry [is] whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether 'it . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" Casper v. Ryan, 822 F.2d 1283, 1288 (3d Cir. 1987) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  In petitioner's Motion, he alleges that the error of law was his deprivation of effective assistance of counsel.  (Mot. at 3-4 (ECF No. 453)).

In order to establish an ineffective assistance of counsel claim, petitioner must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.

Petitioner's burden on the deficiency prong is to show that "counsel's representation fell below an objective standard of reasonableness."  Williams v. Taylor, 529 U.S. 362, 390-91 (2000) (citing Strickland, 466 U.S. at 688).  The proper standard for evaluating objective reasonableness is, as a general guideline, "reasonably effective assistance" under "prevailing professional norms."  Strickland, 466 U.S. at 687-89.  The Court in Strickland has explicitly declined any further specificity.  Id.  The Court of Appeals for the Third Circuit has held (prior to Strickland) that these standards ensure "the exercise of the customary skill and knowledge which normally prevails at the time and place."  Moore v. United States, 432 F.2d 730, 736 (3d Cir. 1970).  Petitioner is not entitled to a "perfect defense" in accordance with this standard and a

"perfect defense" is not guaranteed under the Sixth Amendment. See Strickland, 466 U.S. at 689 ("[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation. . . . The purpose is simply to ensure that criminal defendants receive a fair trial."); Diggs v. United States, 833 F.2d 439, 446 (3d Cir. 1987) ("In any event the right to effective assistance of counsel does not guarantee that an attorney will never err."); Moore, 432 F.2d at 736 ("Perfection is hardly attainable and certainly is not the general rule."); accord Wise v. Smith, 735 F.2d 735, 739 (2d Cir. 1984).

In evaluating whether a counsel's performance was deficient under these standards, the ultimate conclusion must be reached in light of the totality of the circumstances of counsel's performance as a whole. Strickland, 466 U.S. at 690. In reviewing the totality of the circumstances, the court must be "highly deferential" to counsel's assistance, without regard to the vantage of hindsight; it must consider the circumstances from counsel's perspective; and it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." Id. at 689. Considerable latitude is afforded to counsel in executing professional judgment under the circumstances in defending clients. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690.

Petitioner's burden on the prejudice prong is to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Williams, 529 U.S. at 391 (citing Strickland, 466 U.S. at 694). The inquiry is *not* whether a different outcome could have been reached; rather, the question of prejudice hinges upon whether the result of the proceeding was fundamentally unfair or unreliable. Lockhart v.

Fretwell, 506 U.S. 364, 369 (1993); see Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."). Where the evidence is overwhelming in support of the jury's verdict, notwithstanding alleged deficiencies of counsel, it is difficult to conclude that there is a showing of prejudice. See Strickland, 466 U.S. at 695-96; Buehl v. Vaughn, 166 F.3d 163, 181-82 (3d Cir. 1999); accord Allen v. Chandler, 555 F.3d 596, 598 (7th Cir. 2009) ("even if counsel's performance was deficient, [petitioner] was not prejudiced . . . because the evidence of guilt was overwhelming").

The Court of Appeals for the Third Circuit has directed courts to examine the prejudice prong of the Strickland test before evaluating whether counsel's performance was constitutionally deficient. See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993) ("Indeed, this Court has read Strickland as requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant.") (internal quotations and citations omitted). There is no need to address both prongs if petitioner cannot meet his burden of proof on the other. Strickland, 466 U.S. at 697. This court will evaluate each ground for ineffective assistance of counsel asserted by petitioner, following the direction of the Court of Appeals for the Third Circuit to address the prejudice prong first, and will discuss the alleged deficiencies of counsel only to the extent necessary.

If petitioner can show prejudice within the meaning of Strickland, petitioner must then demonstrate that counsel's actions were both subjectively and objectively deficient under the circumstances. See Thomas v. Varner, 428 F.3d 491, 499 n.6 (3d Cir. 2005). In Thomas, the

Court of Appeals for the Third Circuit discussed the objective and subjective facets of the

Strickland's deficiency standards:

> We have previously considered the subjective and objective facets of the *Strickland* standard. *Compare Marshall v. Hendricks,* 307 F.3d 36, 105 (3d Cir.2002) ("[T]he task of the reviewing court is to take each of the claimed failures and measure them against counsel's stated rationale to determine whether the choices were objectively unreasonable."), *with Buehl v. Vaughn,* 166 F.3d 163, 176 (3d Cir.1999) (finding that the strategic presumption could not be overcome because "[a]n objection to [the] brief portions of testimony might have simply highlighted the statements for the jury").

Thomas, 428 F.3d at 499 n.6.

Regarding the presumption that informed strategic decisions of counsel are presumed sound (see Strickland, 466 U.S. at 690-91), the Court of Appeals for the Third Circuit has held this presumption of sound strategy is initially "weak" and can be rebutted by either demonstrating: (1) there was no actual trial strategy, or (2) the strategy actually employed could never be considered sound. Thomas, 428 F.3d at 499-500. Once evidence of an informed strategy, however, has been presented (i.e., a strategy actually exists), the presumption becomes "strong" and "virtually unchallengeable" within the standards of Strickland. Strickland, 466 U.S. at 690-91; Thomas, 428 F.3d at 500. Even if petitioner overcomes the presumption of counsel's sound trial strategy (i.e., the subjective facet), he must still prove, in light of the totality of the circumstances, that counsel's actions were unreasonable under objective standards of professional conduct. Thomas, 428 F.3d at 501.

IV.     **Analysis**

        a.   **Ground One: Inadequate Cross-Examination**

The first ground for petitioner's Motion is that trial counsel "failed to effectively investigate and cross-examine Government witnesses on the nature and circumstances of their

agreements with the Government and on other matters affecting their honesty, sincerity, perception or like characteristics as witnesses . . . ." (Pet'r's Mem. at 20 (ECF No. 454)). Petitioner points to Michael Good ("Good"), the drug kingpin of the criminal conspiracies for which petitioner was charged and who testified against petitioner at trial. Petitioner noted Good previously pled guilty to charges involving 84 grams of crack cocaine (which petitioner maintains is a substantially smaller amount than Good dealt with), and admitted to suffering from schizophrenia in a prior trial. (See id.)). Petitioner argues that he received ineffective assistance of counsel because his trial counsel did not impeach Good on his schizophrenia or sufficiently inquire into Good's plea negotiations with the government. Petitioner asserts that he was prejudiced by this deficient conduct. (See id. at 20-22 (ECF No. 454)). The government maintains that the record shows counsel did have a sound trial strategy, which included impeaching Good on his drug conviction and the nature of his plea agreement with the government, and that it was within counsel's discretion whether to raise issues of Good's mental health and to probe the extent of his plea agreement. (Gov't's Br. at 20, 22 (ECF No. 469)). The government characterizes petitioner's trial counsel's cross-examination of each of the government's witnesses as "extensive, knowledgeable, and spirited" in accordance with the general norms of professional conduct. (Id. at 20 (ECF No. 469)).

Under the Strickland analysis, this court must address the prejudice prong first, and then, if necessary, address whether counsel's assistance was deficient. McAleese, 1 F.3d at 170-71. In evaluating the prejudice prong first, this court finds the merits of petitioner's first ground to fall within the circumstances described in Buehl, 166 F.3d at 181-82. Even if counsel's actions were deficient, there can be no prejudice because the evidence was otherwise overwhelming. Petitioner's burden is to show a reasonable probability – a probability sufficient to undermine

confidence in the outcome – that, but for counsel's alleged deficiencies, the result of the proceeding would have been different. Williams, 529 U.S. at 391 (citing Strickland, 466 U.S. at 694).

This burden was not met here. Petitioner alleges several narrow instances of deficiencies on behalf of trial counsel in failing adequately to cross-examine Good,[4] including: (1) Good stood to benefit from his testimony against petitioner through his plea agreement; (2) Good pleaded guilty to a larger crack cocaine conspiracy that spanned a greater time period than was being alleged at petitioner's trial; (3) Good was schizophrenic; and (4) Good supposedly testified erroneously in a prior trial concerning using lottery numbers as a code for drugs. (Pet'r's Mem. at 27 (ECF No. 454)). Petitioner's narrow focus on the minutiae of counsel's cross-examination is misguided. The standard for analyzing an ineffective assistance of counsel claim is not to scrutinize counsel in a vacuum; rather, the totality of the circumstances of counsel's assistance must factor into the elements of a Strickland analysis, including whether prejudice exists. See Strickland, 466 U.S. at 689, 696. As the government illustrates in its Brief, under the totality of the circumstances petitioner greatly over-emphasizes Good's testimony and criminal history, and ignores the incriminating wiretap evidence and testimony of other witnesses against petitioner, including Sherri Hunter, Keeley Sowell, and Special Agent Jimenez. (Gov't Br. at 24 (ECF No. 469)). Given the overwhelming evidence of guilt adduced by the government during the trial, petitioner's narrow focus on Good's testimony is too speculative to hypothesize that the outcome of the proceedings would have been different if his counsel had conducted the cross-examination on the four matters petitioner raises, and these alleged failures are insufficient to

---

[4] Despite petitioner's contention that the alleged deficiency of counsel on cross-examination encompassed multiple witnesses, he focuses in his Memorandum almost exclusively on counsel's cross-examination of Good. (See Pet'r's Mem. at 27 (ECF No. 454)).

rise to the "reasonable probability" standard under Strickland. Williams, 529 U.S. at 391 (citing Strickland at 694).

Even if the court were to conclude that petitioner was prejudiced by his counsel's actions, there is nothing in the record to indicate that his counsel's actions were professionally deficient in the way petitioner alleges. Petitioner's first assertion that trial counsel inadequately cross-examined Good on the nature of his plea deal is at odds with the record. From the very outset of the direct examination by the government of Good, Good openly admitted that he was serving a fifteen-year sentence for drug trafficking crimes, was hoping for a sentence reduction as a result of his plea agreement, and stood to be charged for further crimes if he were to lie in his testimony against petitioner. (Gov't Br., App. Vol. II at A-482-87 (ECF No. 471)).[5] Petitioner's counsel asked:

> DEFENDANT'S COUNSEL: And your testimony here today is designed so you may very well get a reduction in that sentence?
>
> GOOD: Yes . . . .

(Id. at A-638 (ECF No. 471)).

Petitioner's second assertion fails for largely the same reasons. Good testified on direct examination by the government that he had been selling drugs since the 1980s and that he progressively became more involved in greater quantities of drugs through the 1990s and beyond. (Id. at A-491, 493-94 (ECF No. 471)). The jury was thus well aware that Good was a big-time drug dealer with a lengthy criminal history. Trial counsel cannot be said to be deficient for failing to rehash on cross-examination what had already been openly acknowledged by Good on the record.

---

[5] For ease of access, all citations to the record of the instant case will reference the appendix to the government's Brief (ECF No. 470-71), which is a consecutive pagination of the otherwise fragmented record.

Petitioner's third assertion, that his trial counsel should have cross-examined Good about his schizophrenia, is not compelling. Even if counsel were assumed deficient for failing to impeach Good on his schizophrenia, this tactic had previously been used in the prior trial of Daniel Matthews, Roscoe Thompson, and Larry Ferguson (other coconspirators; at Criminal No. 03-72) and still resulted in convictions. (Gov't's Br. at 22 (ECF No. 469)). Petitioner's fourth and final assertion on this ground—that Good somehow misstated that a reference to lottery numbers was a code for drugs in the trial of Roscoe Thompson, and that trial counsel should have cross-examined Good on these matters at petitioner's trial—is also not compelling. Good's conduct was raised in the trial of Matthews, Thompson, and Ferguson, and they were still convicted.

Petitioner admitted in his Memorandum that "Trial Counsel was reasonably skilled in the law. There can be little doubt of that . . . ."[6] He questions only the "minimum level of diligence that competent representation of Petitioner required." (Pet'r's Mem. at 22 (ECF No. 454)). As the government correctly maintains, the presumptive standard of professional assistance must consider counsel's overall performance throughout the case. See Strickland, 466 U.S. at 690. The Court of Appeals for the Third Circuit has held that the only way to rebut the presumption of sound trial strategy by counsel is either through: (1) demonstrating there was no actual trial strategy; or (2) the strategy employed could never be considered sound. Although petitioner questions his trial counsel's execution of strategy in cross-examining government witnesses

---

[6] Notably, this statement on its face contradicts ground three of petitioner's Motion. With respect to that ground, he alleged: "It is of course a denial of effective assistance of counsel for an attorney to advise his client erroneously on a clear point of law . . . . It is hardly news that a defendant who is found to have given materially false testimony is subject to the U.S.S.G. § 3C1.1 enhancement." (Pet'r's Mem. at 38 (ECF No. 454)) With respect to ground four of petitioner's Motion he alleged: "The law on this [dealing with conspiracy and double jeopardy], of course, was abundantly clear as far back as 1987" and that his trial counsel failed to object to this "clear" point of law. (Id. at 43 (ECF No. 454)).

(chiefly Good), petitioner failed to rebut the presumption of sound trial strategy by his own admission because he stated in his Memorandum:

> Trial counsel elected a two-fold defense strategy. First, he attempted to establish that Petitioner was not a co-conspirator with Mr. Good . . . but merely a buyer of drugs.[7] Second, he attempted to demonstrate that Petitioner did not possess with intent to deliver crack cocaine . . . but rather . . . heroin.

(Pet'r's Mem. at 14 (ECF No. 454); Thomas, 428 F.3d at 499-500. Accordingly, this court concludes that because the record accurately reflects such a two-fold strategy, based on sound legal principles, this election of trial strategy properly creates the "virtually unchallengeable" presumption that counsel rendered sound assistance in conformance with that strategy. Strickland, 466 U.S. at 690-91. Petitioner did not meet his burden to show either prejudice or deficiencies of counsel, and his Motion cannot be sustained on this first ground.

### b. Ground Two: Failure to Investigate

The second ground for petitioner's Motion is that trial counsel "failed to adequately investigate facts and circumstances made known to him by Petitioner, which constituted Petitioner's only realistic defense . . . ." (Pet'r's Mem. at 31 (ECF No. 454)). Petitioner alleges that he identified for his counsel four specific wiretapped telephone calls (the "Steele Call, Frazier Call, Hunter Money Call, and Hunter Bundle Call") which should have been used for the purposes of rebutting government testimony at his trial. (Id.). Petitioner argues that these telephone calls contained exculpatory evidence which indicated that the code word "thing" meant heroin in the government wiretaps, rather than crack cocaine as Good testified. These calls, he argues, showed a tendency to refer to money in units of tens (i.e., "65" for $650) in the wiretaps compared with Good's testimony that a reference to "45" meant $4,500 (in a

---

[7] Petitioner admitted to the contrary on cross-examination at least with respect to petitioner's argument that he sold heroin; "GOVERNMENT'S COUNSEL: Because he [Good] looked to you to be one of his drug distributors, correct? TRAVILLION: Correct." (Gov't Br., App. Vol. III at A-883 (ECF No. 472)).

wiretapped call between Good and petitioner for the sale of crack cocaine).  (Id.).  Petitioner

alleges that his counsel at some point indicated a willingness to use these telephone calls as

evidence during his trial through an expert witness, but that this expert witness was never called

to testify at trial.[8]  (Id.).  Petitioner questions in particular the efficacy of counsel in having the

expert witness review more than 5,000 calls "over one weekend[9]" and the contention that after

that weekend the expert witness "was unable to find anything on the recordings that would be

helpful to Petitioner."  (Id. at 32 (ECF No. 454)).[10]

     Once again ignoring the underlying substance of the allegations on this ground as an

indirect attack on the sufficiency of evidence used against petitioner at trial (as this was already

an issue decided adversely on direct appeal), and focusing on the Strickland analysis, there can

be no prejudice on this ground because even if counsel had impeached Good to petitioner's

satisfaction about these four specific telephone calls, in light of the overwhelming evidence

---

[8] The expert witness is unnamed by petitioner in his Memorandum and the government's Brief in opposition, and the identity of the expert witness is unknown from the record.

[9] To the extent that petitioner argues that the length of time afforded to the expert witness to review the phone calls ("over one weekend") was insufficient (See Pet'r's Mem. at 32 (ECF No. 454)), the record of the trial contradicts this timeframe: "DEFENDANT'S COUNSEL: Here's my issue: I did get a correspondence from my expert on the wiretap.  He indicated, ['] David, I am probably looking at needing the bulk of this week to do what I have to do.['] So, I have no reason to disbelieve him and I'll prepare him on Saturday, Sunday. So, if anything, he is here ready to rock and roll on Monday."  (Gov't Br., App. Vol. II at A-630-31 (ECF No. 471-1)).

[10] The government disputes that petitioner was prejudiced by counsel's decision not to use these telephone calls. The evidence presented at trial as a whole showed that: "Time and time again, Michael Good explained that the coded references to drugs . . . had to be determined based upon the person with whom he was talking, the context of the conversations, and the sequence of the calls." The evidence also showed that: "Michael Good never testified that the term 'thing' always referred to 'crack cocaine.'  Instead, the generic word 'thing' took on different meanings, depending on the context." (Gov't Br. at 23 (ECF No. 469)).  Therefore, the government in effect argues that it would have served no purpose (and therefore can cause no prejudice) whether or not counsel impeached Good on the subject matter of the four calls identified by petitioner.
     Petitioner notes that "[d]espite his best efforts, Petitioner was unable to get Trial Counsel to provide him with copies of the [four] foregoing calls. He believes he has quoted them accurately, and he knows that the substance of the calls is correctly recounted."  (Pet'r's Mem. at 12 (ECF No. 454)).  The government's Brief in opposition notes: "The United States has been unable to determine which calls Travillion is referring to when he describes the 'Hunter Money Call' and the 'Frazier Call.'"  (Gov't Br. at 22 (ECF No. 469)).  Despite both parties' inability to locate the actual calls themselves, there is no need to locate them because petitioner cannot prevail on this ground of ineffectiveness of counsel for the reasons discussed in this opinion.

presented by the government during the trial, this kind of impeachment of Good cannot be said to effect a reasonable probability of a different outcome.  Williams, 529 U.S. at 391 (citing Strickland, 466 U.S. at 694).  As the government alludes in its Brief, Good testified at trial that the meaning of several code words used in the wiretapped telephone calls would change depending on the circumstances:

> GOVERNMENT'S COUNSEL: And you said: What about the other groceries? What were you talking about?
>
> GOOD: It could have been either or, because me and him [Lamont Washington], he was my supplier for the heroin and the crack cocaine."

(Gov't Br., App. Vol. II at A-533 (ECF No. 471)).

Good testified that "clothes" meant money that was owed to him for drugs in one telephone call, and then later testified that in another call that "clothes" meant heroin.  (Id. at A-534, 546 (ECF No. 471)).  These inconsistencies were precisely what petitioner wanted to illustrate through the four telephone calls he argues should have been presented to the jury during the trial.

For the purposes of a Strickland analysis, the court concludes that counsel's failure to introduce these calls cannot be prejudicial.  Based upon the record that included numerous incriminating phone calls and challenges to the credibility of government witnesses, including Good, this court finds that the failure to confront one or more witnesses with four additional calls does not present a reasonable probability of a different outcome.  The court cannot conclude that petitioner was prejudiced by the actions of counsel under these circumstances.  See Strickland, 466 U.S. at 695-96; Buehl, 166 F.3d at 181-82; accord Allen, 555 F.3d at 598 ("even if counsel's performance was deficient, he [petitioner] was not prejudiced . . . because the evidence of guilt was overwhelming").

Even addressing the deficiency prong of the <u>Strickland</u> test, petitioner's argument fails because petitioner admitted his trial counsel *did* submit the four telephone calls at issue—along with every other conceivably relevant phone call—to an expert witness in order to discern whether that evidence would be relevant to introduce at trial. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Strickland</u>, 466 U.S. at 691. Thus, trial counsel's choosing not to utilize the four specific phone calls petitioner maintains were relevant does not create a deficiency in and of itself. Counsel utilized[11] an expert witness to evaluate the merits of the calls in issue, in pursuit of a legitimate trial strategy which petitioner acknowledges existed. When a defendant's counsel conducts such an investigation "strategic choices [made thereafter] are virtually unchallengeable . . . ." <u>McAleese</u>, 1 F.3d at 172 (citing <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989)(quoting <u>Strickland</u>, 466 U.S. At 690-91). Petitioner's mere contention that counsel's expert witness was unable to locate any exculpatory evidence from the voluminous calls provided to him by counsel cannot rise to the level of a deficiency within the meaning of <u>Strickland</u>; counsel cannot fabricate useful evidence where it does not exist. Having found no prejudice or deficiency under <u>Strickland</u>, petitioner's claim on this ground must fail.

### c. Ground Three: Defendant's Own Testimony/Sentencing Guidelines

The third ground for petitioner's Motion is that trial counsel "failed to adequately advise Petitioner of the risk attending Petitioner testifying in his own defense . . . ." (Pet'r's Mem. at 35 (ECF No. 454)). Petitioner's claims on this ground are twofold: he first asserts that he was

---

[11] During the trial, counsel explicitly stated to the court in a conference on Tuesday, November 14, 2006: "Contrary to what perhaps we thought about earlier, utility of my expert has waned as he's begun to go through the stuff as the government's evidence has come in. So, as I sit here right now, I just got off the phone with my expert about a half hour ago, and I said there is probably a 25 percent chance right now that I won't even need you to do that [have the expert testify]." (Gov't Br., App. Vol. II at A-694 (ECF No. 471)).

not warned (as a constitutional deficiency) by his trial counsel that if he testified in his own defense at trial, and the jury disbelieved his testimony, he could be subject to a two-point upward adjustment of his offense level under U.S.S.G. § 3C1.1 for obstruction of justice, and that if he had known of this penalty, he would not have testified.[12]  (Id.)  Second, petitioner asserts that trial counsel's advice to testify that some of the drugs purchased from Good were for personal usage had no legal basis at the time of his advice, and it was therefore a deprivation of effective assistance to allow him to so testify. (Id. at 30 (ECF No. 454)).  On these grounds, petitioner requests this court to either vacate his sentence entirely, or, in the alternative, to adjust the sentencing guidelines.  (Id. at 40, 45 (ECF No. 454)).

With respect to petitioner's first allegation that he was not advised of a possible sentencing enhancement if the jury disbelieved his trial testimony, the government's Brief in opposition (in essence) disputes that petitioner was prejudiced by any alleged deficiencies of trial counsel, maintaining that a misapplication of sentencing guidelines is generally not cognizable on collateral review under a 28 U.S.C. § 2255 motion, as the alleged deficiency constituting prejudice must be "a fundamental defect which inherently results in a complete miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); (Gov't's Br. at 25 (ECF No. 469)).  The crux of the government's position relies on United States v. Cepero, 224 F.3d 256, 267-68 (3d Cir. 2000) (en banc), in which the Court of Appeals for the Third Circuit recognized, as a general concept, that a misapplication of sentencing guidelines does not present a substantial deprivation of a constitutional right consistent with the relief of 28 U.S.C. § 2255.  The court,

---

[12] Because, among other things, the jury had to disbelieve petitioner's testimony in order to convict him on all counts, petitioner was assessed a two-point enhancement to his sentencing guidelines pursuant to § 3C1.1, which placed him in Category III, Level 34, resulting in a recommended sentence of 188-235 months' imprisonment. Without the enhancement pursuant to § 3C1.1, petitioner's guidelines would have placed him in Category III, Level 32, resulting in a guideline sentence of 151-188 months' imprisonment. Petitioner was sentenced to 188 months of imprisonment on all three counts, to be concurrently served. Petitioner notably challenged the propriety of this sentencing enhancement in his direct appeal which was affirmed by the Court of Appeals for the Third Circuit. Travillion, 321 F. App'x at 159.

however, is not persuaded by the government's argument under <u>Cepero</u> and finds the instant case to be distinguishable.

The court in <u>Cepero</u> explicitly disclaimed the suggestion that "a misapplication of the [Sentencing] Guidelines can never rise to the level of a constitutional deprivation." <u>Cepero</u>, 224 F.3d at 268 n.6. The facts of the instant case are on point with <u>United States v. Cabral-Castillo</u>, 35 F.3d 182, 184 (5th Cir. 1994). In <u>Cabral-Castillo</u>, the defendant was convicted of several drug charges—including conspiracy—under advisory sentencing guidelines which placed him in Category III, Offense Level 34 with a corresponding sentence recommendation of 188 to 255 months, and was sentenced to concurrent terms of 188 months on each count. <u>Cabral-Castillo</u>, 35 F.3d at 187-89. These advisory guidelines included a two-point assessment for obstruction of justice, without which the guidelines would have been 151 to 188 months. <u>Id.</u> at 189. The <u>Cabral-Castillo</u> court concluded that the obstruction enhancement was improper and repudiated the government's argument that because the defendant's sentence of 188 months still fell within the correct sentencing guidelines which should have been applied (i.e., the actual sentence was at the minimum of one guideline and the maximum of the other), the error was harmless; instead the court concluded that the change in sentencing guidelines alone was sufficient prejudice. <u>Id.</u> ("Nevertheless, his sentence may well have been affected by the district court's error, particularly in light of the district court's willingness to impose the lowest sentence within the incorrect sentencing guidelines range."). Here petitioner presents virtually the same issue.

Although the Court of Appeals for the Fifth Circuit in <u>Cabral-Castillo</u> conducted its appellate review of the change in sentencing guidelines under a clear error standard, the Court of Appeals for the Third Circuit has adopted the same reasoning:

> Although some courts have adopted an "overlapping range"
> rationale, we conclude that such an "overlap" does not necessarily
> render an error in the [Sentencing] Guidelines calculation
> harmless. Such an overlap, alone, proves too little. The record must
> show that the sentencing judge would have imposed the same
> sentence under a correct Guidelines range, that is, that the
> sentencing Guidelines range did not affect the sentence actually
> imposed. The overlap may be helpful, but it is the sentencing
> judge's reasoning, not the overlap alone, that will be determinative.

United States v. Langford, 516 F.3d 205, 216 (3d Cir. 2008).

The United States Supreme Court has addressed similar issues in accordance with the principles above in the specific context of an ineffective assistance of counsel motion. See Glover v. United States, 531 U.S. 198, 204 (2001) ("Although the amount by which a defendant's sentence is increased by a particular decision may be a factor in determining whether counsel's performance in failing to argue the point constitutes ineffective assistance, under a determinate system of constrained discretion such as the Sentencing Guidelines it cannot serve as a bar to a showing of prejudice.").

This court cannot agree with the government that petitioner's claim of prejudice through the increase to his sentencing guidelines alone serves as a procedural barrier to relief under 28 U.S.C. § 2255. As a consequence, the proper Strickland analysis must be followed. Beginning with the prejudice prong, the *ultimate* question of prejudice hinges upon whether petitioner still would have testified even if he had been advised of the possible obstruction enhancement. In other words, even though petitioner did incur an additional penalty (i.e., one aspect of prejudice) through a sentencing enhancement for his decision to testify, the ultimate question remains— whether he would have *still* testified regardless whether counsel warned petitioner of these possible consequences (i.e., whether there was a reasonable probability of a different outcome). The decision whether to testify at trial is certainly a fundamental constitutional right of the

defendant.  <u>Rock v. Arkansas</u>, 483 U.S. 44, 53 (1987) ("[A]n accused is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will. . . . The choice of whether to testify in one's own defense . . . is an exercise of the [Fifth Amendment] constitutional privilege.") (internal quotations and citations omitted).

In the absence of demonstrating that the decision to waive one's Fifth Amendment right to remain silent was: (1) forced; (2) coerced; (3) made without petitioner's participation; (4) a product of coercing petitioner to use his particular trial defense; or (5) a product of trial counsel's denial of alternative defenses proposed by petitioner:

> the Court assumes that [the petitioner] ultimately made the decision to testify on his own behalf. [The petitioner] having made the decision cannot now complain of the consequences of that decision. While courts have recognized counsel's duty to advise the defendant of his right to testify or not to testify and the strategic implications of each choice, the decision whether or not to testify belongs ultimately to the defendant.

<u>United States v. Lively</u>, 817 F.Supp. 453, 461 (D. Del. 1993); <u>aff'd</u> <u>without</u> <u>opinion</u> at <u>United States v. Lively</u>, 14 F.3d 50 (3d Cir. 1993) (unpublished table opinion).  Even if petitioner's counsel failed to advise him about a possible sentencing guidelines enhancement, petitioner did not meet his burden to show any of the above exceptions are applicable to his case, i.e., that he did not knowingly and voluntarily waive his Fifth Amendment rights.

The decision to call petitioner as a witness in this case was clearly an inseparable part of the underlying defense strategy itself.[13]  <u>Thomas</u>, 428 F.3d at 500 n.7 (permitting judicial speculation into the nature of trial counsel's strategy); <u>Lively</u>, 817 F.Supp. at 461-62 (holding that the decision to call defendant as a witness was an element of trial strategy and mere criticism of the ultimate consequence of that decision cannot give rise to a claim of ineffective assistance).

---

[13] Notably, petitioner was the only witness presented by the defense.  Although not in any way indicative of his guilt, this is certainly indicative of the elements of the strategy chosen by the defense, i.e., to assert defendant dealt in heroin, not crack cocaine.

Without the testimony of petitioner, he would essentially have no way to execute his chosen strategy—which was to rebut the kind of drug petitioner was involved with and his label as a coconspirator instead of a mere buyer. Petitioner did not protest this strategy. (See Pet'r's Mem. at 14 (ECF No. 454)). Therefore, there is no prejudice (i.e., a reasonable probability of a different outcome) shown from counsel's alleged failure to warn petitioner about the potential consequences if the jury disbelieved him because petitioner's strategy required him to testify. The court need not further examine whether there was, in fact, a deficiency for allegedly failing to warn petitioner about the consequences of his testimony due to this lack of prejudice. See Strickland, 466 U.S. at 697.

Petitioner's second major allegation to support this ground of his Motion suggests that there was no sound legal basis for counsel's advice to testify that some of the drugs he bought from Good were for personal use, as a way to reduce the drug weight for the purposes of sentencing. (Pet'r's Mem. at 38 (ECF No. 454)). The government notably did not respond to the substance of these allegations anywhere in its Brief in opposition. Petitioner appears to assert in these allegations that under Thomas, 428 F.3d at 499-500, the trial strategy actually employed by counsel could never be considered sound, and therefore he showed ineffective assistance of counsel.[14]

Examining the prejudice prong of Strickland first, petitioner does not make clear how he was prejudiced by this legal advice beyond a vague statement that: "He [petitioner] went forward to testify anyway because Counsel said he wanted Petitioner to try to 'get the weight down,' and because—due to Counsel's failure to explain the adverse effects of testifying—Petitioner believed he had nothing to lose." (Pet'r's Mem. at 38 (ECF No. 454)). What is unclear,

---

[14] Petitioner does not directly cite Thomas in his Memorandum, although his argument is consistent with its holdings.

however, is whether petitioner actually did "lose" anything. Despite petitioner being assessed a two-point sentencing guideline increase for obstruction of justice as a consequence of his decision to testify, petitioner meshes together the concept that somehow the enhancement was connected to the prejudice alleged in ground one and ground two of his Motion: "Certainly, the jury disbelieved Petitioner. But had Counsel used the telephone calls and Mr. Good's history of testimonial mendacity, the outcome would have been much different." (Id. at 39 (ECF No. 454)). Petitioner argues that had his counsel not been allegedly deficient in his cross-examination of Good (ground one), or pursued an inquiry into allegedly exculpatory phone calls petitioner made known to trial counsel (ground two), the jury would have believed petitioner's testimony, and he would not have been subject to the obstruction of justice enhancement for perjury, or would have been acquitted as a whole. This argument was already analyzed supra and found to be misguided, as the evidence of record was otherwise overwhelming. Counsel was not deficient in these areas, and in any event this chain of speculation is too attenuated to constitute a reasonable probability sufficient to undermine confidence in the outcome in order to create prejudice. See Buehl, 166 F.3d at 181-82.

There can be no finding of deficiency of counsel even if this court were to assume that petitioner was prejudiced on this ground. Petitioner dropped an argument with respect to the personal use strategy on appeal due to a post-appeal decision of the Court of Appeals for the Third Circuit holding that personal usage of a drug will not detract from the quantity of drugs alleged in a conspiracy. United States v. Iglesias, 535 F.3d 150, 160 (3d Cir. 2008)(quoting United States v. Halper, 490 U.S. 435 (1989)); (Pet'r's Mem. at Ex. 2 (ECF No. 454)). The Iglesias decision was one of first impression and implicates that the law was then-unresolved within the Third Circuit and subject to legitimate legal contention prior to the resolution of that

case. Counsel cannot be deficient for pursuing a legitimate legal strategy which had not yet been foreclosed, despite its post-appeal foreclosure. On this basis there cannot be a finding of deficiency on behalf of trial counsel. Petitioner's claim under this ground fails the <u>Strickland</u> test for failure to meet either prong and his Motion cannot be sustained on this ground.

**d.     Ground Four: Double Jeopardy**

The fourth and final basis for petitioner's ineffectiveness of counsel claims is that his trial counsel failed to raise adequately a constitutional objection to his conviction of the charges contained in Count Nine (the crack cocaine conspiracy) and Count Thirteen (the powder cocaine conspiracy) of his indictment, based upon petitioner's belief that conviction of both counts exposed him to double jeopardy. Petitioner argues that the government "artificially split" the Good drug-trafficking enterprise into three separate conspiracies, for which petitioner would be subject to multiple punishments. (Pet'r's Mem. at 40 (ECF No. 454)). Even though the government's response was cursory,[15] (see Gov't's Br. at 27 (ECF No. 469)), petitioner is not entitled to relief on this basis.

Petitioner alleges ineffective assistance of counsel for *failing* to raise a double jeopardy claim (rather than a collateral attack on his sentence based on a claim of double jeopardy). This

---

[15] The government stated explicitly in its Brief that it failed to understand the entirety of petitioner's argument, and that it was "unaware of any legal authority" that could support petitioner's arguments. (Gov't's Br. at 27 (ECF No. 469)). Petitioner cited to legal authority *and* the controlling legal standard for the disposition of a double jeopardy claim (the <u>Liotard</u> test). (Pet'r's Mem. at 41-46 (ECF No. 454)). "[W]hen a defendant makes a non-frivolous showing that an indictment charges the same offense as that for which he was formerly placed in jeopardy, *the burden of establishing separate crimes*[,] *in this case separate conspiracies*[,] *is on the government*." and the government has the burden of showing by a preponderance of the evidence that there were in fact two separate crimes. <u>United States v. Inmon</u>, 568 F.2d 326, 331-32 (3d Cir. 1977) (emphasis added). This court is obliged to consider the merits of petitioner's claim under the law regardless of the quality of the government's response; petitioner is not making an actual double jeopardy claim in his motion, but rather seeks to vacate or correct his sentence because of ineffective assistance of counsel in failing to *raise* a double jeopardy claim. "It is manifest that a claim of double jeopardy is an affirmative defense which must be raised properly [i.e., before trial] or may be deemed waived." <u>United States v. Young</u>, 503 F.2d 1072, 1074 (3d Cir. 1974). The court does not need to reach an ultimate conclusion about whether a claim of double jeopardy would have been sustained. The court must follow the <u>Strickland</u> analysis in determining whether counsel's assistance was deficient and whether petitioner was prejudiced by this deficiency.

court, to assess prejudice, must determine whether the double jeopardy claim could have been successful. The Double Jeopardy Clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST., amend. 5. The same clause forbids "multiple punishments for the same offense." E.B. v. Verniero, 119 F.3d 1077, 1092 (3d Cir. 1997). "[A] single conspiracy may not be subdivided arbitrarily for the purposes of prosecution" and the court is mindful that "[o]ffenses are not the same merely because they arise out of the same general course of criminal conduct." Young, 503 F.2d at 1075.

The Court of Appeals for the Third Circuit has held that in order to support a claim of double jeopardy, the defendant must make a prima facie, nonfrivolous showing that the two offenses charged are the same in both law and fact. United States v. Garcia, 919 F.2d 881, 887 (3d Cir. 1990); United States v. Felton, 753 F.2d 276, 278 (3d Cir. 1985). The standard of disposition on the issue whether there are multiple conspiracies or only one for the purposes of double jeopardy is the Liotard "totality of the circumstances" test. United States v. Liotard, 817 F.2d 1074, 1077-78 (3d Cir. 1987). The ultimate question is whether there are multiple *agreements* or only one. United States v. Smith, 82 F.3d 1261, 1267 (3d Cir. 1996); United Liotard, 817 F.2d at 1077-78.

In Liotard, the court acknowledged that for the particular crime of conspiracy, the typical "same evidence" test normally used to ascertain whether more than one crime had been committed for the purpose of double jeopardy is insufficient. Liotard, 817 F.2d at 1077-78. In Liotard, the court of appeals set forth four factors to be considered in determining whether a conspiracy is single or multiple in nature, and therefore, whether there is more than one agreement: (1) the *locus criminis* of the conspiracy; (2) the degree of temporal overlap; (3) the

overlap of personnel; and (4) the similarity in the overt acts alleged. Id. at 1078. These four factors, however, are not an exhaustive list and do not need to be given the same deference or even be considered in all cases. Smith, 82 F.3d at 1267. An additional factor that may be considered is whether there is immateriality of the participants' interdependence, which provides a strong indication of two conspiracies. Id. at 1269 ("When the evidence indicates that the activities of the alleged conspiracies are not interdependent or mutually supportive and that there are major participants in each conspiracy who lack knowledge of, or any interest in, the activities of the other, this factor weighs heavily in favor of a conclusion that two conspiracies exist.").

Here, petitioner confuses the Liotard standards for evaluating whether double jeopardy is shown. He appears to argue that because he was charged with both a crack cocaine conspiracy (Count Nine) and a powder cocaine conspiracy (Count Thirteen), and the underlying substantive offense for those two conspiracies (violation of 21 U.S.C. § 841(a)) does not specify the type of drug as an element of the offense,[16] he was exposed to double jeopardy for both convictions. (Pet'r's Mem. at 42 (ECF No. 454)). Petitioner uses an analogy likening his situation to a car dealership selling multiple brands of vehicles, with one ultimate objective to sell cars. (Id. at 37 (ECF No. 454)). At this juncture, however, petitioner obscures the nature of the crime of conspiracy involving drugs. See 21 U.S.C. § 846. As a *malum in se* crime, it is immaterial what the predicate offense is or even whether it actually occurred: a conspiracy is a separate crime in and of itself. Salinas v. United States, 522 U.S. 52, 65 (1997) ("[C]onspiracy is a distinct evil, dangerous to the public, and so punishable in itself."); United States v. Rigas, 605 F.3d 194, 209 (3d Cir. 2010) ("Whether the object of a single agreement is to commit one or many crimes, it is

---

[16] The United States Supreme Court opined similarly in DePierre v. United States, 131 S.Ct. 2225 (2011), that 21 U.S.C. § 841(b)(1) (the sentencing portion corresponding to the conduct described in 21 U.S.C. § 841(a)) has a "somewhat confounding" structure and lamented "inartful legislative drafting" of the statute, but ruled that the statute is not ambiguous. See DePierre, 131 S.Ct. at 2232-33.

in either case that agreement which constitutes the conspiracy which the statute punishes.")
(citing Braverman v. United States, 317 U.S. 49, 53 (1942)). Evaluating the similarities in
predicate offenses only leads back to the ultimate question whether there were two agreements or
only one. Smith, 82 F.3d at 1267.

Petitioner argues that his case falls within the four corners of the Liotard test for
conspiratorial double jeopardy. Petitioner asserts, in addressing the four Liotard factors, that
double jeopardy could exist because the two conspiracies share the same *locus criminis* (the
Pittsburgh area), contemporaneous time periods (on or about November 20, 2002, to on or about
February 8, 2003), commonality of participants (Good, Keeley Sowell, petitioner, etc.), and
similarities in overt acts (with both indictments relying on similar wiretap and other evidence).
(See Indict. Mem. at 3-4 (ECF No. 2); (Pet'r's Mem. at 42-43 (ECF No. 454)).

In analyzing the four Liotard factors as petitioner asserts, there is no question that the two
conspiracies involved the exact same locale and date range, as there is no dispute that the drug-
trafficking offenses occurred in the Pittsburgh area and the government alleges the exact same
dates for both conspiracies in its indictment memorandum. (Indict. Mem. at 3-4 (ECF No. 2)).
Petitioner's argument that the two conspiracies shared the same operations (i.e., overt acts) is
problematic because the conspiracy statute under which petitioner was convicted (21 U.S.C. §
846) does not require proof of any overt acts. United States v. Shabani, 513 U.S. 10, 13-14
(1994); (Pet'r's Mem. at 43 (ECF No. 454)). Petitioner's allegations of similarity of participants
in both conspiracies is somewhat lacking; the only two common participants between Count
Nine and Count Thirteen as alleged by the government in its indictment memorandum are
Keeley Sowell and petitioner. (Indict. Mem. at 3-4 (ECF No. 2)). Petitioner responds to this
point by indicating that the indictment included: "persons both known and unknown" to the

grand jury (e.g., Good, et al.). (Pet'r's Mem. at 42 (ECF No. 454)). Therefore, it is at least nonfrivolous to claim commonality of participants. Finally, in evaluating the additional factor under Smith, 82 F.3d at 1269—whether there is immateriality of the participants' interdependence—it would be difficult to say that the crack cocaine conspiracy is entirely independent from the powder cocaine conspiracy, since necessarily if the supply of powder cocaine were to fail then it would be impossible to "cook" any crack cocaine.[17]

Even if it is assumed for purposes of argument that petitioner established a colorable, prima facie claim that a double jeopardy objection could have been raised prior to trial,[18] and correspondingly assuming that petitioner's counsel *should* have raised the claim (i.e., counsel was deficient), the first question under a Strickland analysis is whether petitioner suffered any prejudice by counsel's failure to object, i.e., whether there is a reasonable probability for a different outcome of the trial. See Williams, 529 U.S. at 391 (citing Strickland, 466 U.S. at 694). It is here that petitioner's claim of prejudice caused by the failure to raise a double jeopardy claim lacks substance; the sole basis for petitioner's allegation of prejudice on this ground is:

> Trial Counsel's failure to raise the issue [of double jeopardy] exposed
> Petitioner to conviction on an additional felony count . . . [and]
> provided the jury with an additional count to consider, and
> contributed to the all-too-human perception in the jurors' eyes that
> Petitioner was charged with *so many counts* that he must be guilty of
> something.

---

[17] The wiretap evidence in the record provides several instances where there was simply no supply of powder cocaine to be cooked, and that this caused considerable delay in facilitating the sale of crack cocaine. (See e.g. Gov't Br., App. Vol. IV at A-1130-31, 1166 (ECF No. 473)).

[18] As was previously referenced in footnote 15 supra, this court is not in a position to make an ultimate determination about the merits of a double jeopardy claim *sua sponte*, as this is not the issue presented before the court in petitioner's motion; the sole question at issue here is whether counsel was constitutionally deficient in failing to *raise* a double jeopardy claim prior to trial. The issue of double jeopardy has to be raised prior to trial. "It is manifest that a claim of double jeopardy is an affirmative defense which must be raised properly [i.e., before trial] or may be deemed waived." Young, 503 F.2d at 1074. Hence, the time and place to raise a double jeopardy objection must have been raised (if at all) prior to trial, and if overruled at that stage, to be reconsidered upon direct appeal. Counsel did not raise this issue prior to trial and it was not preserved for petitioner's prior direct appeal. Thus, the controlling standard for this ground of petitioner's Motion is still the Strickland ineffective assistance of counsel test.

29

(Pet'r's Mem. at 44 (ECF No. 454)) (emphasis added).

The *one* additional felony conspiracy count alone cannot create prejudice (i.e., a reasonable probability of a different outcome) in this context. Petitioner was sentenced concurrently for his offenses, and even assuming that one of petitioner's conspiracy charges should have been dropped and only the more serious charge presented before the jury as petitioner suggests (rather than both at trial), the Court of Appeals for the Third Circuit has held that whether an additional criminal charge presented before a jury can result in prejudice of the accused hinges upon the heinousness of the additional charge and the circumstances of each individual case, with one consideration being the number of additional charges. See United States v. Silverman, 106 F.2d 750, 753 (3d Cir. 1939) (holding that where additional charge was not a significantly more egregious offense, and was the only additional offense presented, there could be no prejudicial effect on the jury). The fundamental concept behind this holding appears to be drawn from an influential statement made by Judge Learned Hand in United States v. Lotsch, 102 F.2d 35, 36 (2d Cir. 1939). He stated: "[Where] the evidence as to each [charge] was short and simple; there was no reasonable ground for thinking that the jury could not keep separate what was relevant to each."[19]

For a more modern comparison, the Court of Appeals for the Fifth Circuit has specifically held that in the context of an ineffectiveness of counsel claim for failing to raise a double jeopardy objection to two charges—which would theoretically result in only the more

---

[19] These principles were reflected by this court in a hearing on a post-trial motion for judgment of acquittal pursuant to a Rule 29(c) of the Federal Rules of Criminal Procedure on January 9, 2007, where counsel raised an analogous argument on sufficiency of evidence concerning Count Ten of the indictment:

> THE COURT: [W]hen you have a case where I have instructed the jury that they have to look at each count separately and they have to look at—they have to compartmentalize the evidence, they are instructed to do that, and I feel that the instructions as a whole were sufficient.

(Gov't Br., App. Vol. IV at A-1248-49 (ECF No. 473-1)).

serious offense being charged—it is too remote and speculative on this basis alone to find prejudice within the meaning of Strickland. Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992) ("The scenario posited in petitioner's brief is speculative at best, and there is no evidence that his counsel would have better served [petitioner] by pursuing a trial strategy that would have forced the state to rely solely on the [more serious] charge.").

The court finds Bradford persuasive under the facts of the instant case. Here, petitioner was subject to only two charges of conspiracy—one involving crack cocaine and the other powder cocaine. There is no basis in the record to show that the jury somehow could conflate the evidence relevant to one conspiracy with the other conspiracy. Assuming *arguendo* that counsel could and should have raised a double jeopardy objection prior to trial[20] (i.e., counsel was deficient), there can be no prejudice, since there would not have been a reasonable probability of a different outcome of petitioner's trial whether his counsel made the argument or not, and he

---

[20] Although there is no record that counsel made a bona fide double jeopardy objection prior to trial, the record *does* reveal insights during the final charge conference that counsel *did* object to the exposure of petitioner to conviction of both crack and powder cocaine conspiracies:

> GOVERNMENT'S COUNSEL: It seems to me that the issue perhaps the defense counsel wants to be able to argue to the jury, if there was one conspiracy that involved crack cocaine and powder cocaine, then the defendant cannot be convicted of conspiracy involving powder cocaine and a conspiracy involving crack cocaine.
> DEFENDANT'S COUNSEL: That is correct, the defense wants the ability to make that argument. GOVERNMENT'S COUNSEL: And I would submit that's not correct . . .
> . . .
> DEFENDANT'S COUNSEL: Judge, I disagree. They charged it with two conspiracies, two different drugs, same time period, and I should be allowed to demonstrate that they haven't proven the conspiracies which they've charged by showing one master overall agreement that happened to include cocaine and powder.
> I think what we are dealing with, I think I highlighted in this [sic] one of our prior in-chambers discussions, it's a unique situation as the government charged it . . . . I want to be able to argue they have just shown one and not the two apple and orange conspiracies set forth in the indictment.

(Gov't Br., App. Vol. III at A-907-09 (ECF No. 472-1)). The prior discussion referenced by counsel appears to be an occasion where he argued a Rule 29(c) motion for judgment of acquittal on the ground that the government had only proven one conspiracy. "THE COURT: I don't think there is a flaw in charging two conspiracies in the same— is that your argument, that they can't charge two conspiracies? DEFENDANT'S COUNSEL: No. No. No. I recognize their ability to do it, but . . . [w]hen the evidence demonstrates one conspiracy, as opposed to the two they have charged, that's a fatal variance, judgment of acquittal to be granted." (Gov't Br., App. Vol. II at A-742 (ECF No. 471-2)). As was already indicated, however, there is no need to evaluate whether petitioner's counsel was in fact deficient for failing to raise a double jeopardy objection prior to trial because even if his conduct was assumed to be deficient, there is still no prejudice within the meaning of Strickland.

was sentenced concurrently for his offenses.  Therefore, petitioner is not entitled to relief on the ground of ineffectiveness of counsel for failure to raise a double jeopardy objection to his conspiracy charges.

## V.      Conclusion

None of the grounds for petitioner's ineffective assistance of counsel claim under 28 U.S.C. § 2255 can be sustained.  Petitioner did not meet his burden on any of the four grounds set forth in his Memorandum to show he was prejudiced as a result of his counsel's deficient performance as required under <u>Strickland</u>, 466 U.S. at 687; (<u>See</u> Pet'r's Mem. at 6 (ECF No. 454)).  For the reasons set forth above, petitioner's Motion will be denied in its entirety.

## VI.     Certificate of Appealability

When a district court issues a final order on a § 2255 motion, it must make a determination whether it will permit a certificate of appealability.  <u>See</u> <u>3rd Cir. LAR 22.2</u>.  A certificate of appealability will only be issued upon a finding of a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1).  Insubstantial or nonconstitutional questions do not qualify for a certificate of appealability under this statute because they are not within its literal meaning.  <u>Cepero</u>, 224 F.3d at 267.  For the reasons stated in this opinion, there is no finding of any substantial deprivation of a constitutional right in the instant case; thus no certificate of appealability is issued.

## VII.    Order

AND NOW, this 29th th day of October 2012, upon full and thorough consideration of petitioner's Motion and Memorandum in support thereof, the government's Brief in opposition

thereto, and the record of the instant case, petitioner's Motion pursuant to 28 U.S.C. § 2255

(Crim. No. 04-144 (ECF No. 453) and Civ. No. 10-903 ) is **DENIED**.  No certificate of

appealability is issued.

It is **SO ORDERED**.

By the court,

/s/JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

cc:     Percy W. Travillion
        Reg. No. 08132-068
        Federal Prison Camp
        P.O. Box 1000
        Loretto, PA  15940